UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEEWAY MEDIA GROUP, LLC and BRUCE LEE ENTERPRISES, LLC, )<br>  *Plaintiffs*, )<br>  )  1:13-cv-00822-JMS-TAB<br> *vs.* )<br>  )<br>LAURENCE JOACHIM, TRANS-NATIONAL FILM CORPORATION, and TELEVENTURES INC., )<br>  *Defendants*. ) | |

## ORDER

Presently pending before the Court are: (1) a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Laurence Joachim, [dkt. 17]; (2) a Motion to Strike Second Amended Complaint filed by Mr. Joachim, [dkt. 23]; (3) a Verified Motion for Leave to File Second Amended Complaint Nunc Pro Tunc filed by Plaintiffs Leeway Media Group, LLC ("Leeway") and Bruce Lee Enterprises, LLC ("BLE"), [dkt. 28]; (4) three Motions to Withdraw Attorney Appearances filed by counsel for Mr. Joachim, [dkts. 34; 35; 37]; and (5) an Application for Entry of Default as to Defendant Televentures Corporation filed by Leeway and BLE, [dkt. 39].

## I.
### THE COMPLAINT ALLEGATIONS

**A. The Parties**

Leeway is a California limited liability production company owned by Shannon Lee, the daughter of actor and martial artist Bruce Lee. [Dkt. 16 at 1, ¶ 1; 3, ¶ 11; 8, ¶ 36.] BLE is a California limited liability company and is the "successor-in-interest and sole rights holder" of "post mortem rights in and to [Mr. Lee's] name, likeness, image, persona, mannerisms, voice, sayings, and signature (the "Lee Right of Publicity")." [*Id.* at 1-2, ¶ 2; 7, ¶ 29; 8, ¶ 35.] Mr. Joachim is

an individual who resided in New York and California.[1]  [*Id.* at 2, ¶ 3.]  Defendants Trans-National Film Corporation ("Trans-National") and Televentures Inc. ("Televentures") are both New York companies, and Mr. Joachim was a principal of Televentures.  [*Id.* at 2, ¶¶ 4-5.][2]

### B. The Dispute

In 1965, Mr. Lee completed his first Hollywood screen test (the "Screen Test") for Greenway Productions in connection with a television show called "Number One Son," which ultimately was not made.  [*Id.* at 3-4, ¶ 15.]  Plaintiffs allege that the Screen Test is over eight minutes in length, and "has been used freely in countless productions over the last thirty-five (35) years, and is widely available for view (and reproduction), at no cost…."  [*Id.*]

After Mr. Lee's untimely death in 1973, the Lee Right of Publicity transferred to his family, and his family also registered numerous trademarks and copyrights (collectively, the "Lee Intellectual Property").  [*Id.* at 6, ¶ 23; 7, ¶¶ 29-31.]  Plaintiffs allege that Mr. Lee's family "has continuously and vigorously protected the Lee Intellectual Property from misuse by third parties desiring to trade on the immeasurable goodwill and fame and notoriety as associated with [Mr. Lee] himself and/or the Lee Intellectual Property."  [*Id.* at 8, ¶ 32.]  The Lee Right of Publicity is currently held by BLE.  [*Id.* at 8, ¶ 35.]

In April 2008, Leeway initiated, organized, produced, marketed, and owned a documentary relating to Mr. Lee's life and titled "I Am Bruce Lee" (the "Documentary").  [*Id.* at 8, ¶ 36.]  The Documentary was released and aired on Spike TV in early 2012, is approximately 94 minutes in length, and contains approximately 91 seconds of the Screen Test.  [*Id.* at 8-9, ¶¶ 37-

---

[1] As discussed more fully below, Mr. Joachim's counsel has advised the Court that Mr. Joachim is now deceased.  [*See* dkts. 34; 35; 37.]

[2] Neither Trans-National nor Televentures has appeared, or otherwise participated, in this litigation.

39.]  The Screen Test is also included on the DVD of the Documentary as "bonus materials." [*Id.* at 9, ¶ 39.]

In July 2012, Mr. Joachim contacted BLE and Leeway claiming to own the copyright in and to the Screen Test.  [*Id.* at 10, ¶ 42.]  Plaintiffs dispute that Mr. Joachim has any copyright in or to the Screen Test.  [*Id.* at 10, ¶¶ 43-50.]

### C.  This Litigation

On May 20, 2013, Leeway and BLE filed a Complaint against Mr. Joachim and Trans-National, [dkt. 1], then filed an Amended Complaint on July 25, 2013, [dkt. 8], and finally filed the operative Second Amended Complaint against Mr. Joachim, Trans-National, and Televentures on August 21, 2013, [dkt. 16].  In the Second Amended Complaint, Leeway and BLE assert the following claims relating to the Screen Test: (1) declaration of no valid copyright, [*id.* at 13-14, ¶¶ 62-69]; (2) declaration that Mr. Joachim has no standing, [*id.* at 14-15, ¶¶ 70-78]; (3) declaration of no copyright infringement, [*id.* at 15-16, ¶¶ 79-85]; (4) declaration of no unfair competition, [*id.* at 16-17, ¶¶ 86-91]; (5) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), [*id.* at 17-18, ¶¶ 92-96]; (6) unfair competition under 15 U.S.C. § 1125(a), [*id.* at 18-19, ¶¶ 97-104]; (7) right of publicity infringement under Indiana Code § 32-36-1-1, [*id.* at 19-20, ¶¶ 105-112]; (8) right of publicity infringement under California Civil Code § 3344.1, [*id.* at 20-21, ¶¶ 113-119]; (9) common law right of publicity, [*id.* at 21, ¶¶ 120-125]; (10) common law unfair competition, [*id.* at 21-22, ¶¶ 126-132]; (11) unjust enrichment, [*id.* at 22, ¶¶ 133-34]; (12) conversion, [*id.* at 23, ¶¶ 135-38]; (13) deception, [*id.* at 23-24, ¶¶ 139-44]; and (14) violation of the Indiana Crime Victims' Act, [*id.* at 24-25, ¶¶ 145-149].

### D. The California Action

On June 18, 2013, Mr. Joachim filed a lawsuit against Leeway, BLE, and several other entities relating to the Lee Intellectual Property, including the Screen Test. [*See* dkt. 1 in *Laurence Joachim v. Network Media Group, Inc., et al.*, 2:13-cv-04390-DDP-AJW (the "California Action").] Mr. Joachim asserted claims for copyright infringement and unfair competition. [*Id.*]

On September 4, 2013, Leeway and BLE filed a Motion to Dismiss or Transfer, or, in the Alternative, to Stay in the California Action. [Dkt. 20 in the California Action.] In the motion, Leeway and BLE stated that this litigation "involve[es] precisely the same matters and material parties at issue [in the Indiana case]," [dkt. 21 at 2 in the California Action], and sought dismissal of the California Action, transfer to this District, or a stay of the California Action pending adjudication of this lawsuit. On September 11, 2013, the California Court vacated the motion, stating "A determination of the Motion[] will require this Court to make a determination about whether the court in Indiana has personal jurisdiction over Joachim. In light of the determination this Court must make, it would be preferable to decide the Motion[] after the motion to dismiss pending in the Indiana Action is resolved." [Dkt. 28 at 2 in the California Action.]

On October 2, 2013, Leeway and BLE answered Mr. Joachim's Complaint and asserted counterclaims against Mr. Joachim and third-party claims against Trans-National and Televentures for trademark infringement under the Lanham Act, unfair competition under 15 U.S.C. § 1125(a), right of publicity infringement under California Civil Code § 3344.1, common law unfair competition, and unjust enrichment. [Dkts. 30 and 33 in the California Action.]

## II.
### RELEVANT PROCEDURAL HISTORY

On August 22, 2013, Mr. Joachim filed a Motion to Dismiss for Lack of Personal Jurisdiction in this matter. [Dkt. 17.] After the motion was fully briefed, Mr. Joachim's counsel filed

Motions to Withdraw Appearances, [dkts. 34; 35; 37]. In the motions to withdraw, counsel advised the Court that Mr. Joachim had recently died.[3] [*Id.*] Subsequently, the Court issued an Order requiring the parties to file a joint report addressing what effect Mr. Joachim's death may have on the pending Motion to Dismiss, whether Leeway and BLE intend to pursue the litigation in light of Mr. Joachim's death, and Mr. Joachim's statement in his Motion to Dismiss that the two corporate defendants – Trans-National and Televentures – may no longer exist as corporate entities. [Dkt. 36.]

On December 20, 2013, the parties filed a Response to Order of December 11, 2013, in which Leeway and BLE contended that their claims can be litigated against Mr. Joachim's Estate, that they believe they have properly served Televentures, and that they intend to seek default as to Televentures. [Dkt. 38 at 1-3.] Mr. Joachim's counsel set forth various options for the Court to take in dealing with Mr. Joachim's Motion to Dismiss. [*Id.* at 3-4.] Shortly thereafter, Leeway and BLE filed an Application for Entry of Default as to Televentures. [Dkt. 39.]

After considered the respective citizenships of the parties, the fact that the California Action and this action involve the same parties and issues, the potential that both this Court and the California Court will have to deal with the substitution of Mr. Joachim's Estate as a party, the fact that all of Mr. Joachim's counsel seek to withdraw from this action, and the Court's concern that personal jurisdiction over Mr. Joachim in this Court is tenuous if it even exists, the Court ordered the parties to show cause why this matter should not be transferred to the Central District

---

[3] To date, no formal notice of Mr. Joachim's death has been filed in this case. But, because the parties do not dispute that he is deceased, the Court will not consider his presence in California as a factor weighing in favor of transfer. However, the Court also will not consider Leeway's and BLE's speculation that Mr. Joachim's son Marco Joachim – who resides in New York – "will become representative to the estate of Mr. Joachim in this Case," [dkt. 43 at 3]. Without actual substitution of the Estate for Mr. Joachim, it would be improper to consider the Estate's location in the transfer analysis.

of California. [Dkt. 41.] The parties filed their responses accordingly. [Dkts. 42; 43.] Based on those responses, the Court now addresses whether this matter should be transferred to the Central District of California.

### III.
### APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Court typically considers four factors in deciding whether to transfer an action: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the situs of material events and access to proof; and (4) the interest of justice. *No Baloney Mktg., LLC v. Ryan*, 2010 U.S. Dist. LEXIS 30296, *26-35 (S.D. Ind. 2010). Federal district courts have the inherent power to administer their dockets so as to conserve scarce judicial resources. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995); *see also Neal v. Honeywell Inc.*, 191 F.3d 827, 830 (7th Cir. 1999) ("[s]ometimes the judiciary must act in self-defense").

In the Seventh Circuit, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th

Cir. 2010) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).[4]

Moreover, 28 U.S.C. § 1404(a) "permits a flexible and individualized analysis" and "affords the district courts the opportunity to look beyond the narrow or rigid set of considerations in their determinations." *Research Automation*, 626 F.3d at 978. This Court is "grant[ed] a substantial degree of deference…in deciding whether transfer is appropriate." *Id.*

## IV.
### DISCUSSION

Mr. Joachim argues in his Response to the Court's Order to Show Cause that the case should be transferred to the Central District of California because this Court does not have jurisdiction over him, and because the transfer factors – including the interest of justice and the convenience of the parties and witnesses – all weigh in favor of transfer. [Dkt. 42.] Leeway and BLE respond that they would consent to this matter being transferred to the Southern District of New York, and proceed to address why transfer to New York would be proper but do not address the propriety of transfer to the Central District of California at any length. [Dkt. 43.]

At the outset, the Court notes the odd posture of this case: Leeway and BLE are both California companies, yet they oppose transfer to their home state and instead propose that the Court transfer this case even farther away, to New York. The Court finds that transfer of this case to the Southern District of New York would be inappropriate. As discussed below, one of

---

[4] Applying the law of the Fifth Circuit, the Federal Circuit labeled *Coffey*'s "strong statement" about the independent considerations of judicial economy as dicta. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010). To the extent that *Research Automation*'s reaffirmation of *Coffey*'s dicta might also be characterized as dicta – a question not considered in *In re Vistaprint* – the Court notes that the Seventh Circuit has cautioned lower courts to avoid "treat[ing] lightly" dicta "until disavowed," *Hendricks County Rural Electric Membership Corp. v. NLRB*, 627 F.2d 766, 768 n.1 (7th Cir. 1980). Given the Seventh Circuit's strong concerns about judicial economy, *see, e.g., Neal*, 191 F.3d at 830 (reviving, for reasons of judicial economy, an ultimately meritorious argument made below but not raised on appeal because "[s]ometimes the judiciary must act in self-defense"), the Seventh Circuit does not appear likely to disavow *Coffey* / *Research Automation* anytime soon. This Court will act accordingly.

the main advantages of transferring this case to the Central District of California is so that it can be treated with the currently-pending California Action. Indeed, Leeway and BLE have described this lawsuit as "involving precisely the same matters and material parties at issue [in the California Action]." [Dkt. 21 at 2 in the California Action.] Additionally, all of the transfer factors weigh in favor of transfer to California. Transfer to New York is not an efficient use of judicial resources, and the Court will not further complicate this case by creating yet another forum for the parties' disputes. Accordingly, it only addresses whether transfer to the Central District of California is appropriate.

Given its potentially dispositive nature, the Court will begin with a discussion of the interest of justice before considering the relative convenience of the parties and the witnesses of this venue and the Central District of California.

**A. Interest of Justice**

As a separate element of the transfer analysis, the interest of justice considers "the efficient administration of the court system." *Research Automation*, 626 F.3d at 978 (citation omitted). Typically, courts evaluating this element "look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id.* (citation omitted).

The congestion and speed-to-trial factors favor transfer to the Central District of California. Recent figures from the Administrative Office of the United States Courts are instructive: civil actions in the Central District of California number 667/judgeship on a weighted caseload basis and waited 19.3 months from filing to trial, while the weighted caseload in this District was

733/judgeship and the time to trial was 36.2 months.[5]  This over sixteen-month difference is significant.  Additionally, the California Action already includes third-party claims filed by Mr. Joachim against Leeway and BLE that mirror the claims Leeway and BLE assert against Mr. Joachim here.  [*See* dkt. 43 at 6 (Leeway and BLE state that both this action and the California Action "involve the same issues of copyright infringement and unfair competition as related to Plaintiffs' use of the Screen Test as well as claims against the defendants in this action for the illegal use of the various intellectual property rights associated with Bruce Lee").]  And, significantly, the California Action is already set for trial on November 18, 2014 and discovery has commenced.  [*See* dkt. 55 in the California Action.]  Conversely, no discovery has taken place in this case.  Transferring this matter to the Central District of California would allow one court to deal with the claims between the parties on a much more expedited basis.

As for each District's familiarity with governing law, that consideration is neutral.  Federal law governs several of Leeway's and BLE's claims, [*see* dkt. 16 at 13-14, ¶¶ 62-69 (Count I for Declaration of No Valid Copyright); 15-16, ¶¶ 79-85 (Count III for Declaration of No Copyright Infringement); 16-19, ¶ ¶ 92-104 (Counts V and VI for Trademark Infringement under the Lanham Act and Unfair Competition under 15 U.S.C. § 1125(A))], making either Indiana or California an appropriate forum.  The remaining claims are brought under either Indiana or California law.  While the existence of two claims under Indiana statutes slightly weighs against transfer, *see, e.g., Coffey*, 796 F.2d at 221 ("In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law") (citation omitted)), Leeway and BLE also assert a claim under California statute, with which the California Court would be more familiar.  Additionally, the Court is confident that the California Court can apply

---

[5]http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementSatistics/2013/district-fcms-profiles-june-2013.pdf&page=1 (last accessed January 27, 2014).

Indiana law effectively to the Indiana-specific claims. *See Heckler & Koch, Inc. v. Tippman Sport, LLC*, 2009 U.S. Dist. LEXIS 116306, *8 (S.D. Ind. 2009) (transferring trademark case to Utah (where related action was pending), even where Indiana law would apply to some claims, because "any federal district court will be equally capable of resolving the relatively uncomplicated types of claims asserted in this case, even those involving Indiana law").

The third consideration, "the respective desirability of resolving controversies in each locale," *Research Automation*, 626 F.3d at 978, strongly favors transfer. Judicial economy is advanced by transferring this matter so the Central District of California can consolidate this matter with the California Action and consider the mirror image claims in the same litigation.[6] A transfer and consolidation would enable discovery to be better coordinated between the parties, and would perhaps decrease the need for future discovery due to the fact that significant discovery has already taken place in the California Action. Additionally, the magistrate judge in the California Action can explore a global settlement between the parties and a transfer would eliminate the possibility of inconsistent judgments regarding any copyright and trademark infringement issues.

Finally, regarding the relationship that the community of each venue has to the controversy, this factor favors transfer. Indiana does not appear to have any relationship to the controversy, other than Leeway's and BLE's vague allegations that it suffered injury in Indiana because Defendants offered the Lee Intellectual Property there. But Leeway and BLE also allege that

---

[6] The Court acknowledges that this matter was filed before the California Action. The Seventh Circuit Court of Appeals has instructed, however, that the order of filing is part of the transfer analysis, but "should weigh no more heavily in the district court's analysis than the plaintiff's choice of forum." *Research Automation*, 626 F.3d at 982. Accordingly, the Court gives this factor little or no weight given the weak connection, discussed herein, between this forum and the operative facts.

Defendants offered the Lee Intellectual Property throughout the world, and in every state in the United States. [*See, e.g.*, dkt. 20 at 11 ("Defendant has licensed the Screen Test for commercial use around the world (including, of course, throughout the United States)….In fact, Defendant offers these licenses by way of a website which is fully accessible by Indiana consumers").] This undercuts any argument that Indiana has a meaningful connection with this dispute. Instead, a much more significant relationship is the fact that Leeway and BLE are California companies, and California has an interest in ensuring that corporations headquartered there receive the protections afforded them under the law. Indiana – where no parties are headquartered or have any connection, except for possibly Defendants offering allegedly infringing products in Indiana and the rest of the United States – does not have this relationship to the controversy, and this factor weighs heavily in favor of transfer.

The interest of justice strongly supports a transfer to the Central District of California. The desirability of having both this case and the California Action pending in the same district in order to promote judicial efficiency and foreclose the possibility of inconsistent judgments, the fact that the speed-to-trial factor weighs in favor of transfer, and the strength of the other factors make transfer appropriate.

### B. Convenience of the Parties and Witnesses

The second branch of the transfer analysis considers the "convenience of parties and witnesses." 28 U.S.C. § 1404(a). Factors relevant to this "convenience" inquiry include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *CMG Worldwide, Inc. v. Bradford Licensing Assocs.*, 2006 U.S. Dist. LEXIS 98674, *10-11 (S.D. Ind. 2006) (citation omitted).

First, the Court finds that Leeway's and BLE's choice of forum, Indiana, should be given less deference because Indiana is not their home state. *See Volkswagen Aktiengesellschaft v. Dee Eng'g, Inc.*, 2003 U.S. Dist. LEXIS 3550, *6 (S.D. Ind. 2003) ("[L]ess deference is accorded the plaintiff's forum choice when the plaintiff chooses to litigate outside its home forum"). Furthermore, "where the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim, the deference traditionally given to that selection is lessened." *MPH Techs. Oy v. Zyxel Communs. Corp.*, 2010 U.S. Dist. LEXIS 72893, *5 (N.D. Ill. 2010). As discussed above, while Leeway and BLE allege that infringing products were offered in Indiana, the same could be said of any state in the country because offers allegedly were made through a website which was accessible nationwide and even worldwide. The only other connection is that Leeway's and BLE's counsel is located here, but that, without more, does not establish a connection with Indiana and does not warrant deference. The operative facts here have a weak connection to Indiana and, for that reason, the Court gives little deference to the fact that Leeway and BLE chose to sue here.

Second, the situs-of-material-events factor weighs in favor of transferring this case. While Leeway and BLE argue that Defendants offered to license the Screen Test in Indiana, they have not alleged any other connections with Indiana. To the extent that Leeway and BLE argue that they suffered injury in Indiana, thus making it the situs of material events, the Court rejects that argument. *See CMG Worldwide, Inc.*, 2006 U.S. Dist. LEXIS 98674 at *12-13 (the fact that some injury may have occurred in Indiana "proves too much. It would mean that plaintiffs could force defendants from anywhere to defend themselves in Indiana against plaintiffs' claims to have worldwide exclusive rights to Marilyn Monroe's right of publicity"). The situs-of-material-events factor weighs in favor of transfer.

The third factor, ease of access to sources of proof, also weighs in favor of transfer. Leeway's and BLE's sources of proof are presumably in California, while Televenture's and Trans-National's are presumably in New York.[7] Accordingly, venue in California would be more convenient for Leeway and BLE than litigating the case here, and would be a wash for Televentures and Trans-National.

As for the convenience of witnesses, this factor also weighs in favor of transfer. Litigating here will force Televenture's and Trans-National's witnesses to travel to California, but they would have to travel even if the case remained here. Transfer will be much more convenient for Leeway's and BLE's witnesses, who are primarily located in California.

The final factor – convenience of the parties – also weighs in favor of transfer. Defendants all have ties to New York, so travelling to California is only slightly more inconvenient than travelling to Indiana. Conversely, it would be much more convenient for Leeway and BLE, both

---

[7] The Court notes some confusion as to the citizenship of Televentures and Trans-National. Leeway and BLE allege in the Second Amended Complaint, and in their third-party claims in the California Action, that Televentures and Trans-National are New York companies. [*See* dkt. 16 at 2, ¶¶ 4-5; dkt. 30 at 21, ¶¶ 4-5 in the California Action.] In his response to the Court's Order to Show Cause, Mr. Joachim states that "Plaintiffs and Defendants are all California entities, have their principal place of business in California, and have substantial contacts with California," but cites to filings in this and the California Action that allege that Televentures and Trans-National are New York companies. [Dkt. 42 at 6-7.] Because Televentures and Trans-National have not appeared in either this or the California Action, and have not answered allegations as to their citizenship, the Court must assume they are New York companies as alleged by Leeway and BLE.

of whom are headquartered in California yet still oppose transfer there, to litigate this case in California rather than Indiana.[8]

In summary, the Court gives little deference to Leeway's and BLE's choice of forum, due to the fact that Leeway and BLE are located in California and Indiana has little to no connection with the operative facts. Considerations of convenience to the witnesses and the parties, as well as the other convenience factors, all weigh in favor of transfer. Additionally, a transfer to the Central District of California will allow for a full and speedier resolution of all matters disputed in both cases, and foreclose the possibility of inconsistent judgments related to Defendants' activity. The Court finds that the "interest of justice" factors weigh heavily in favor of transferring this matter to the Central District of California.[9]

## V.
### CONCLUSION

Transferring this action to California would strongly promote the interest of justice. Under the circumstances, transfer is "clearly" proper, *Coffey*, 796 F.2d at 220 (citation omitted). The Court therefore directs the Clerk to **TRANSFER** this action to the Central District of California pursuant to 28 U.S.C. § 1404(a). The Motion to Dismiss for Lack of Personal Jurisdiction

---

[8] As required for transfer under 28 U.S.C. § 1404(a), the Court also finds that this matter could have originally been brought in the Central District of California against Mr. Joachim, since that court has personal jurisdiction over him. [*See* dkt. 1 at 2, ¶ 3 in the California Action (Mr. Joachim alleges that he is "an individual residing in the State of California and doing business in the County of Los Angeles, in the State of California").] As to Televentures and Trans-National, neither entity has challenged the Court's exercise of personal jurisdiction in the California Action, nor have they even appeared in that case. The Court notes without finding, however, that the California Court would likely have specific personal jurisdiction over those entities given the connections the allegations in this lawsuit have to California, including that the Screen Test at issue was filmed in Hollywood, California. [*See* dkt. 16 at 3-4, ¶ 15.]

[9] Because the Court is transferring this matter, it has not considered – and need not consider – whether it has personal jurisdiction over Mr. Joachim or any of the Defendants. *See Cote v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986) ("[U]nder 1404(a)…, the transferring court need not have personal jurisdiction over the defendants").

filed by Defendant Laurence Joachim, [dkt. 17], is **DENIED AS MOOT**.  Any previously ordered dates and deadlines are **VACATED** and all other pending motions are **TERMINATED on this Court's docket, but should remain pending in the California Court.**

01/30/2014

                                            Hon. Jane Magnus-Stinson, Judge
                                            United States District Court
                                            Southern District of Indiana

**Distribution via ECF only to all counsel of record**